Filed 8/14/26  P. v. Porter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACHARY ADDISON PORTER,<br><br>    Defendant and Appellant. | D084543<br><br><br>(Super. Ct. No. SCD286221) |


APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Daniel Rogers, Adrian R. Contreras, and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

Zachary Addison Porter appeals the judgment sentencing him to prison after a jury found him guilty of second degree murder for driving his truck

into Met Austin Simon and killing him. He claims the trial court erred by allowing the People's expert witness and a percipient lay witness to testify that the collision was intentional but not allowing his expert witness to testify it was accidental. Porter also claims the testimony of the People's expert witness about diagrams prepared by a non-testifying witness violated his federal constitutional right to confront adverse witnesses. He finally claims the court erred by denying his request to instruct the jury on voluntary manslaughter based on heat of passion as a lesser included offense of murder. We find no prejudicial error and affirm the judgment.

I.

BACKGROUND

A. *Prosecution Case*

Simon and M.L. lived at the same hotel in downtown San Diego. M.L. considered Porter "a good friend." On March 27, 2020, Simon tried to force his way into M.L.'s room while Porter was there. Simon was scared when he saw Porter and stopped. On four or five prior occasions at the hotel, Simon pulled M.L.'s pants down and tried to have sex with her, but she was not interested and reported the incidents to hotel management. M.L. found the incidents "really embarrassing" and told Porter only "part of it."

In the early hours of April 28, 2020, Porter drove M.L. home from a party at the home of her friend. At 4:21 a.m., a surveillance camera captured his truck entering a parking lot across the street from the hotel where she and Simon lived. The truck stopped and remained stationary for approximately six minutes with its headlights off. Porter spotted Simon and asked M.L. whether "that was him." She was unsure but said "it looked like it." Porter asked M.L. whether "he should go," which she took to mean whether he should "hit him." She then saw Porter "losing his f**king mind"

2

and driving at Simon.  Video surveillance captured Porter's truck accelerating and running into Simon.  Simon died at the scene from blunt trauma that severed his spinal cord.

Jesus Gutierrez observed the incident from his truck, which was parked on a street adjacent to the parking lot.  He saw Porter's truck accelerate toward Simon, who unsuccessfully tried to avoid the collision.  When the prosecutor asked Gutierrez whether the collision "look[ed] like an accident to [him]," Porter objected.  The prosecutor stated, "It calls for a lay opinion," and the court overruled the objection.  Gutierrez answered, "I don't believe so."  When the prosecutor next asked Gutierrez whether the collision "appear[ed] to be an intentional act from [his] perspective," he answered, "That's how it is."  Porter objected to the use of the word "intentional."  The court overruled the objection and allowed the answer to stand.  Gutierrez later testified that right after the collision, he heard tires squeal as Porter's truck turned sharply and accelerated to exit the parking lot.

Porter drove himself and M.L. back to his house.  He "seemed really calm" to her before, during, and after he drove his truck into Simon.  During the trip to his house, Porter told M.L. not to say anything about the collision, and she promised not to do so.  When they arrived at the house, he again "ma[de] sure that [she] wasn't going to say anything."  Porter told M.L. that "this happened as a result of karma" for "all the bad things that were done to her by [Simon]."

Several San Diego police officers went to the parking lot in response to a report of a fatal hit-and-run.  They found Simon's wallet, conducted a walk-through of the scene, took photographs and measurements, and obtained footage from video surveillance cameras.  Based on images of the truck and a partial license plate number, police eventually found the truck at the border

3

between Mexico and the United States and determined Porter was the owner. Mexican authorities located Porter in Mexico and returned him to the border, where San Diego police took him into custody.

One of the police officers who went to the scene and participated in the investigation, Michael Gottfried, testified as an expert on traffic collisions. In forming his opinions about the collision involving Porter's truck and Simon, Gottfried relied on his training and experience in investigating collisions; his own observations of the skid marks and other evidence in the parking lot; photographs, diagrams, and reports prepared by other officers who investigated the collision; and footage from surveillance cameras. Gottfried testified that another investigating officer, Stephanie Ott, prepared diagrams and a report; she was a qualified traffic officer; he was familiar with her work; and he agreed with her opinion that the truck depicted in the diagrams was at fault for the collision with Simon. In explaining why he agreed with Ott's opinion, Gottfried testified, "[T]he truck in our opinion, my opinion, intentionally hit the pedestrian." Porter asserted an "[o]bjection to intention, 'intentionally,'" which the court overruled. Gottfried went on to explain why he concluded the collision was intentional.

B.  *Defense Case*

Porter waived his right to counsel and represented himself at trial. He called only one witness, Stephen Plourd, a traffic accident reconstructionist and private investigator who testified as an expert on traffic collisions. Plourd did not view the scene of the collision involving Porter's truck and Simon. He based his opinions on his review of maps of the parking lot available on the Internet, police reports, and footage from surveillance cameras.

4

On direct examination, Porter asked Plourd whether anything in a portion of surveillance video footage of the collision he had just played for the jury "led [him] to believe that this was a deliberate or intentional act." After the court sustained the prosecutor's objection, Porter played more of the footage and repeatedly asked Plourd, based on what he saw in the footage, whether he could determine that the collision was intentional or how he would describe it. The court sustained the prosecutor's objections that the questions were vague, lacked foundation, or called for improper opinion. The court struck Plourd's testimony that the footage of Porter's truck turning away from Simon led Plourd "to believe there was a collision and an accident." The court allowed him to testify that the activation of the truck's brake lights and its turning before the collision indicated "an attempt to avoid hitting [Simon]." Plourd further testified that "at the last moment" before the collision, "there was a slowing because there's braking and a veering to the right because there's turning of the wheels." When Porter asked Plourd for his "final determination of how the collision occurred," he answered, "I can't determine if it was an intentional movement or act."

On cross-examination, the prosecutor asked Plourd, "Did you determine whether the truck or [Simon] was at fault?" He responded, "I kind of say it's more the truck, but I think they're both at fault."

C.     *Argument and Instructions*

The prosecutor argued the collision between Porter's truck and Simon was no accident; it was a "[r]evenge murder" for what Simon had done to M.L. The prosecutor accused Porter of lying in wait to kill Simon and of willfully, deliberately, and premeditatedly killing him, and urged the jury to find Porter guilty of first degree murder. Porter argued the killing was

5

accidental and he was guilty of involuntary manslaughter or vehicular manslaughter, but not murder.

The court instructed the jury on first degree murder (based on willfulness, deliberation, and premeditation and lying in wait), second degree murder, and involuntary manslaughter (based on speeding). (CALCRIM Nos. 520, 521, 580, 595.) The court denied Porter's request for instructions on voluntary manslaughter based on heat of passion. (CALCRIM Nos. 522, 570.)

D.  *Verdict and Sentence*

The jury found Porter not guilty of first degree murder but guilty of second degree murder. (Pen. Code, §§ 187, subd. (a), 189, subds. (a), (b).) The court sentenced him to prison for 15 years to life. (*Id.*, § 190, subd. (a).)

II.

DISCUSSION

Porter seeks reversal of the judgment based on multiple evidentiary errors and an instructional error. As we shall explain, he has shown no prejudicial error.

A.  *Admissibility of Opinions of Witnesses*

Porter challenges the trial court's rulings on the admissibility of the expert opinions of Gottfried and Plourd and the lay opinion of Gutierrez about whether the collision between Porter's truck and Simon was intentional or accidental. We review such rulings for abuse of discretion. (*People v. Leon* (2015) 61 Cal.4th 569, 600–601 [lay opinion]; *People v. McDowell* (2012) 54 Cal.4th 395, 426 [expert opinion].) We must uphold the evidentiary rulings unless Porter shows the trial court acted in an arbitrary, capricious, or absurd manner that caused a miscarriage of justice. (*People v. Nieves* (2021) 11 Cal.5th 404, 445 (*Nieves*).)

6

1. *Gottfried's Testimony*

Porter complains the trial court erroneously overruled his objection to Gottfried's testimony that Porter's truck "intentionally hit" Simon. He contends that testimony should have been excluded because it was tantamount to "telling the jury that [he] intended to kill Simon" and "invaded the province of the jury [by] answering the primary question in the case." We disagree.

Before we can reach the merits of Porter's contention, we must dispose of the People's objection that he forfeited the contention by failing to assert it at trial. A judgment will not be reversed for erroneous admission of evidence unless "[t]here appears of record an objection to or motion to exclude or to strike the evidence that was timely made *and so stated as to make clear the specific ground of the objection or motion.*" (Evid. Code, § 353, subd. (a), italics added.) Evidence Code section 353 does not require any particular form of objection; the objection suffices if it alerts the trial court to the basis for exclusion of the evidence and affords the offering party the opportunity to establish its admissibility. (*People v. Nelson* (2011) 51 Cal.4th 198, 223; *People v. Partida* (2005) 37 Cal.4th 428, 435.) Although Porter did not articulate a legal basis for his "[o]bjection to intention, 'intentionally,' " it is clear he considered it improper for Gottfried to opine the collision that killed Simon was intentional. Improper opinion is a recognized ground for objection to a witness's testimony. (*People v. Gutierrez* (2026) 118 Cal.App.5th 622, 640; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83.) The trial court's prompt overruling of the objection without asking Porter for a specific ground and the prosecutor's silence indicate they understood the basis for the objection. Under these circumstances, we conclude Porter did not forfeit his claim of error.

7

We now turn to the merits. An expert may testify in the form of an opinion only if the opinion concerns "a subject that is sufficiently beyond common experience" and "would assist the trier of fact." (Evid. Code, § 801, subd. (a).) A law enforcement officer whose duties include investigation of traffic collisions may testify as an expert and may rely on his experience and personal observations to give opinions about the factors involved in and the cause of a particular collision. (*Kastner v. Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52, 57; *People v. Haeussler* (1953) 41 Cal.2d 252, 260–261 (*Haeussler*); *Hart v. Wielt* (1970) 4 Cal.App.3d 224, 229–230 (*Hart*).) Specifically, such an officer may testify that a particular collision was "staged" and not accidental based on the movements of the vehicles involved, their speeds, the resulting damage to the vehicles, and the claimed personal injuries. (*People v. Singh* (1995) 37 Cal.App.4th 1343, 1362–1364, 1378 (*Singh*).)

Gottfried similarly relied on the path of travel of Porter's truck, its rapid acceleration and lack of braking, the skid marks it left behind, and other circumstances to conclude the collision was intentional and not accidental. The jury's likely familiarity with some aspects of his testimony (e.g., the significance of the path and acceleration of the truck) did not preclude admission of his opinion, because the jury likely was unfamiliar with other aspects (e.g., the significance of the skid marks). (*People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 753; *People v. Jackson* (2013) 221 Cal.App.4th 1222, 1237.) Gottfried's expertise in investigating collisions allowed him to appreciate the significance of details that jurors might overlook, to synthesize all the evidence in a way that jurors likely could not, and to provide an opinion that would "assist" them in understanding the evidence. (Evid. Code, § 801, subd. (a).) Since expert opinion testimony

8

" ' "will be excluded only when it would add *nothing at all* to the jury's common fund of information" ' " (*People v. Jones* (2012) 54 Cal.4th 1, 60), the trial court properly overruled Porter's objection to Gottfried's opinion that the collision between Porter's truck and Simon was intentional.

Porter insists his objection should have been sustained because the jury was "equally competent to assess the evidence" and Gottfried's testimony "supplant[ed] the jury's role in deciding the issue" of "whether the collision was intentional." We are not persuaded. "Rarely, if ever, does an expression of opinion by a so-called expert not amount to that which either the court or jury might adopt as a basis for the ultimate decision in the case. However, that does not mean that the witness is deciding the case or that in so testifying he is usurping the functions of the jury. He is merely giving an opinion, based upon his technical training, which the court may or may not accept as testimony that is proper and necessary to an enlightened consideration and a correct disposition of the ultimate issue." (*Wells Truckways, Ltd. v. Cebrian* (1954) 122 Cal.App.2d 666, 674.) Porter acknowledges an expert's opinion is not inadmissible merely "because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) "There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved.' " (*People v. Wilson* (1944) 25 Cal.2d 341, 349; accord, *People v. Lowe* (2012) 211 Cal.App.4th 678, 684; see *Haeussler, supra*, 41 Cal.2d at p. 260 [" 'Necessarily, in this field, much must be left to the common sense and discretion of the trial court.' "].)

9

The trial court did not abuse its discretion by admitting Gottfried's opinion.  Unlike the cases on which Porter relies, Gottfried was neither asked to give nor gave an opinion on an element of the charged crime (*People v. Pearson* (2013) 56 Cal.4th 393, 442, 444 [premeditation and deliberation for first degree murder]; *People v. Nunn* (1996) 50 Cal.App.4th 1357, 1365 [intent to kill for attempted murder]), on an ultimate fact in dispute (*People v. Frederick* (2006) 142 Cal.App.4th 400, 412 (*Frederick*) [whether entity was endless chain scheme]), or an a critical fact whose determination "required no expertise" (*People v. Rouston* (2024) 99 Cal.App.5th 997, 1011 (*Rouston*) [who fired gun]).  Gottfried did *not* testify that Porter intended to kill Simon or otherwise "opine on [Porter's] guilt or innocence." (*People v. Romo* (2016) 248 Cal.App.4th 682, 697.)  Instead, like the experts in *Singh, supra*, 37 Cal.App.4th 1343, he relied on his own investigation in this case and his expertise in investigating traffic collisions to explain to the jury why the movement of the vehicle, the skid marks, and other circumstances led him to conclude the collision between Porter's truck and Simon was intentional, not accidental.  The trial court instructed the jury that it alone had "to decide what happened" and that in doing so it was "not required to accept" any witness's opinions and could "disregard any opinion [it found] unbelievable, unreasonable, or unsupported by the evidence."  (CALCRIM Nos. 200, 332.) On this record, by admitting Gottfried's opinion that the collision was intentional, the court did not act in an arbitrary, capricious, or absurd

10

manner that caused a miscarriage of justice.[1]  (*Nieves, supra*, 11 Cal.5th at p. 445; *Hart, supra*, 4 Cal.App.3d at p. 230.)

    2.    *Gutierrez's Testimony*

Porter next challenges the admission of Gutierrez's testimony that the collision did not "look like an accident to [him]" and "appear[ed] to be an intentional act from [his] perspective."  He argues this was improper opinion testimony by a lay witness because it "went beyond [Gutierrez's] perception, the facts personally observed."  We again disagree.

As a threshold matter, we reject the People's argument the challenge has been forfeited.  The colloquy among Porter, the prosecutor, and the court indicates they all knew the prosecutor sought to elicit a lay opinion that Porter thought was improper.  For the same reasons Porter did not forfeit his challenge to the Gottfried's opinion testimony (see pt. II.A.1, *ante*), we conclude he did not forfeit his challenge to Gutierrez's.

We also conclude the challenge fails.  A lay witness may testify in the form of an opinion if it is rationally based on his perception and helpful to a clear understanding of his testimony.  (Evid Code, § 800; *People v. Dalton* (2019) 7 Cal.5th 166, 231.)  "Generally, a lay witness may not give an opinion about another's state of mind" but "may testify about objective behavior *and describe behavior as being consistent with a state of mind*."  (*People v.*

---

[1]    "[U]nder Evidence Code section 801, the trial court acts as a gatekeeper to exclude speculative or irrelevant expert opinion."  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.)  In exercising this critical gatekeeping function, trial courts should vigilantly ensure expert opinion testimony does not " 'invade[] the province of a jury to decide a case.' "  (*Rouston, supra*, 99 Cal.App.5th at p. 1010.)  Trial courts must be especially careful when the distinction between permissible and impermissible expert opinion is a fine one, as here.

*Chatman* (2006) 38 Cal.4th 344, 397, italics added.) For example, a percipient witness may testify that a mother loved her children and wanted to keep them when the issue of whether the mother would abandon them was relevant (*Dalton*, at pp. 231–232), that the defendant displayed anger and hatred before shooting the victim when such emotions were relevant to the defendant's motive or mental state (*People v. Weaver* (2012) 53 Cal.4th 1056, 1086), or that the defendant "*seemed* to enjoy kicking the custodian" when the defendant's enjoyment in inflicting pain was relevant (*Chatman*, at p. 397). Under these authorities, the trial court did not abuse its discretion by allowing Gutierrez to testify that, based on his observation of the movement of Porter's truck toward Simon, the collision did not "*look like* an accident" and "*appear*[*ed*] *to be* an intentional act" (Italics added.)

### 3. *Plourd's Testimony*

Porter complains the trial court unfairly excluded testimony from Plourd that the collision was accidental after the court admitted testimony from Gottfried that it was intentional. He relies on our Supreme Court's statement that the trial court "should strive to prevent unfairness to either side when one side presents evidence on a point, then tries to prevent the other side from responding." (*People v. Steele* (2002) 27 Cal.4th 1230, 1248.) That statement concerns the permissible scope of cross-examination or redirect examination during which a party may present evidence to supply context for, to explain, or to rebut evidence the opposing party presented. (*Id.* at pp. 1247–1248; *People v. Cleveland* (2004) 32 Cal.4th 704, 744–746.) *Steele* does not require the trial court to allow a party to ask improper questions or to present inadmissible evidence to rebut evidence the opposing party presented. (*People v. Abilez* (2007) 41 Cal.4th 472, 502–503; *Steele*, at p. 1249, fn. 3.) When Porter tried to do just that, the trial court sustained the

People's objections that the questions by which Porter sought to elicit Plourd's opinion that the collision was accidental were vague, lacked foundation, or called for improper opinion. Porter has not challenged those rulings, so we must presume they were correct. (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 795; *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015.) He has shown no unfairness under *Steele*.

Nor has Porter shown the trial court violated his constitutional right to present a defense by excluding opinion testimony from Plourd that the collision was accidental. (See U.S. Const., 6th & 14th Amends.; *People v. San Nicolas* (2004) 34 Cal.4th 614, 662 [6th & 14th Amends. guarantee defendant's right to present expert testimony at trial].) "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, *or otherwise inadmissible under standard rules of evidence*." (*Taylor v. Illinois* (1988) 484 U.S. 400, 410, italics added.) The trial court's rulings sustaining the People's objections to certain questions Porter asked Plourd did not operate as "a ' "*blanket exclusion*" ' of evidence that stripped [Porter] of [his] defense." (*Frederick, supra*, 142 Cal.App.4th at p. 412.) Plourd was allowed to testify that Porter's truck slowed and turned away from Simon immediately before the collision, that he could not determine whether the collision was intentional, and that Porter and Simon were both "at fault" for the collision. Although the court would not allow Plourd to testify that the collision was "not intentional" or was "accidental," that was the substance of the testimony he was allowed to give. There was no denial of his right to present a defense that requires reversal of the judgment. (*Nieves, supra*, 11 Cal.5th at p. 441; *San Nicolas*, at p. 663.)

13

B.    *Admissibility of Opinion of Non-testifying Investigator*

Porter next claims the trial court prejudicially erred by admitting testimony from Gottfried that Ott prepared diagrams of the collision between Porter's truck and Simon, he was familiar with her work, she was a qualified traffic officer, and he agreed with her opinion that the truck was at fault for the collision.  Porter contends that because Ott did not testify at trial, "[t]his testimony was inadmissible as it constituted hearsay for which no exception applied."  He also contends that admission of the testimony "violated [his] constitutional right to confront adverse witnesses."

Porter did not preserve this claim of error for appeal.  He acknowledges that he made no objection when Gottfried testified about Ott's qualifications, diagrams, and opinion.  Claims that statements were admitted in violation of the hearsay rule or the confrontation clause are forfeited on appeal if no corresponding objections were made at trial.  (Evid. Code, § 353, subd. (a); *People v. Redd* (2010) 48 Cal.4th 691, 730 [confrontation clause]; *People v. Vance* (2023) 94 Cal.App.5th 706, 713 [hearsay].)  We decline Porter's invitation to exercise our discretion to consider the claim on the merits.  (See, e.g., *In re Sheena K.* (2007) 40 Cal.4th 875, 887 ["at times a Court of Appeal has exercised its discretion to hear a constitutional claim despite its holding or assumption that the rule of forfeiture applies"].)

C.    *Instruction on Voluntary Manslaughter Based on Heat of Passion*

Porter's final claim of error is that the trial court prejudicially erred by refusing his request that the jury be instructed on voluntary manslaughter based on heat of passion.  Porter contends evidence that Simon sexually assaulted M.L., in whom Porter was romantically interested, and that he "lost his mind" when he saw Simon in the parking lot warranted giving the requested instructions.  We are not persuaded.

14

"Voluntary manslaughter is considered a lesser, necessarily included, offense of intentional murder." (*People v. Choyce* (2025) 18 Cal.5th 86, 104 (*Choyce*).) "Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*People Nelson* (2016) 1 Cal.5th 513, 538 (*Nelson*).) Heat of passion has subjective and objective components. The defendant must actually, subjectively, kill under the heat of passion; and the heat of passion must be such as would naturally arise in a reasonable person by the provocative conduct of the victim. (*Choyce*, at pp. 104–105.) "To satisfy this test, the victim must taunt the defendant or otherwise initiate the provocation." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) "[A]ct[ing] out of a *passion for revenge* . . . will not serve to reduce murder to manslaughter." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144.) When the defendant is charged with murder, instruction on voluntary manslaughter is required only if there is substantial evidence from which the jury reasonably could conclude the defendant committed voluntary manslaughter but not murder. (*Nelson*, at p. 538.) We review de novo a claim that instructions on voluntary manslaughter were erroneously refused. (*Ibid.*)

The trial court properly denied Porter's request to instruct the jury on voluntary manslaughter based on heat of passion. As to the subjective component of heat of passion, there was no evidence Porter was so "upset, distraught, hysterical, or otherwise provoked" that he acted " ' "rashly or without due deliberation and reflection" ' " when he drove his truck at Simon. (*Choyce, supra*, 18 Cal.5th at p. 105; *Nelson, supra*, 1 Cal.5th at p. 538.) To the contrary, M.L. told police that Porter asked whether he "should go like hit [Simon]" right before the collision and was "really calm" before, during, and after the collision. Her statement that Porter was "losing his f\*\*king mind,"

15

when considered in the context of the entire police interview, meant that he was exercising poor judgment, not that he was being overwhelmed by any " ' " '[v]iolent, intense, high-wrought or enthusiastic emotion.' " ' " (*People v. Smith* (2018) 4 Cal.5th 1134, 1166.)  As to the objective component of heat of passion, there was no evidence Simon physically or verbally attacked Porter before the killing.  (*Choyce*, at p. 105.)  The sexual assaults by Simon on M.L. that Porter relies on as "evidence of substantial provocation" do not satisfy the objective component.  It is unclear what, if anything, Porter knew about the assaults because M.L. told him only an unspecified "part of it."  Moreover, Porter acknowledges the assaults occurred "weeks before the current crime." Since enough time had passed for any passion aroused by learning of the sexual assaults to cool, the killing was an act of revenge or punishment.  In other words, it was murder, not manslaughter.  (*People v. Daniels* (1991) 52 Cal.3d 815, 868; *People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1704.) No evidence supported giving the requested manslaughter instructions.

## III.

## DISPOSITION

The judgment is affirmed.


BERMÚDEZ, J.

WE CONCUR:


CASTILLO, Acting P. J.


RUBIN, J.